**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH D.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISAGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. Action No: 3:25-cv-03377-GC<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Joseph D's[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying Plaintiff's application for Social Security Disability (SSD) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I. BACKGROUND

## A. Procedural Background

Plaintiff has a high school education and worked as a Corrections Officer. (AR 348, 393, 459.)[3] On January 14, 2021, Plaintiff filed an application for SSD, alleging that he became disabled as of July 30, 2015. (*Id.* at 303-307, 406-407, 462, 498.) Plaintiff alleged he could not work because of the following conditions: "left knee tear in meniscus; pain in left knee; sprained/strained left elbow; pain in left elbow; left shoulder pain; tear in rotator cuff of left shoulder; damaged biceps tendon in left shoulder; and pain in lower right side of back." (*Id.* at 96.) The application was denied on May 27, 2021. (*Id.* at 95.) Upon reconsideration, Plaintiff's application was denied again on November 10, 2021. (*Id.* at 102.) On December 15, 2021, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (*Id.* at 163-165.) That hearing took place on May 11, 2022. (*Id.* at 65-94.)

The ALJ issued Plaintiff an unfavorable decision by finding Plaintiff not disabled through March 31, 2022, and Plaintiff requested a review of the decision before the Appeals Council. (*Id.* at 462-464.) On July 27, 2023, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. (*Id.* at 136-137.) Specifically, the Appeals Council remanded for the ALJ to give further consideration to Plaintiff's maximum residual functional capacity (RFC) and to obtain supplemental evidence from a vocational expert. (*Id.*)

Plaintiff received a second hearing before an ALJ on January 30, 2024. (*Id.* at 46-64.) On May 30, 2024, the ALJ issued an unfavorable decision, finding Plaintiff not disabled from July 30,

[3] "AR" refers to the Administrative Record, available at ECF No. 4. This Opinion cites the internal page numbers when referring to the Administrative Record. Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2015, through the date of the ALJ's decision. (*Id.* at 17-37.) On March 4, 2025, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3.) The ALJ's decision thus became the Commissioner's final decision. (*Id.*)

On April 28, 2025, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff raises two arguments. First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not evaluate the medical opinion of physical therapist Timothy Hatt, M.S.P.T. (ECF No. 10 at 19-21.) Second, Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ did not properly evaluate all the parts of physical therapist Thomas Xenakis, P.T., D.P.T.'s opinion. (*Id.* at 21-25.)

**B. The ALJ's Decision**

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff was not disabled. (AR 18-20.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022, and "has not engaged in substantial gainful activity since July 30, 2015, the alleged onset date." (AR 20.)

At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine, left knee meniscus tear, sprained left elbow, rotator cuff tear in the left shoulder, status post left shoulder surgery, and obesity." (*Id.*) The ALJ noted that these medically determinable, severe impairments "significantly limit the ability to perform basic work activities." (*Id.*) The ALJ found that Plaintiff had another impairment, left Achilles tendinitis, which is not severe. (*Id.*) The ALJ noted that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.* at 21.) *See also* 20 C.F.R. § 416.925(a) (pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter"). The ALJ noted that, while obesity generally "may have an adverse impact upon co-existing impairments," there was no indication that Plaintiff's obesity, "when evaluated with his other medical impairments" met or equaled the severity of any of the impairments listed in the applicable regulation. (AR 21.)

At step four, the ALJ conducted an RFC assessment to determine whether Plaintiff could perform the requirements of his past relevant work. (*Id.*) After consideration of the Administrative Record, the ALJ described Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: he can stand and/or walk for four hours in an eight-hour workday. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, but he can never crawl or climb ladders, ropes, or scaffolds. [Plaintiff] can frequently reach in the front, to the side, and overhead using the left upper extremity which is the dominant hand. [Plaintiff] is unable to push, pull, or operate foot controls using the left lower extremity. [Plaintiff] must avoid hazards such as dangerous machinery and unprotected heights. [Plaintiff] must avoid concentrated exposure to extreme temperatures of cold.

(*Id.*) As to whether Plaintiff could perform the requirements of his past relevant work, the ALJ concluded that Plaintiff "is unable to perform past relevant work as actually or generally performed." (*Id.* at 36.) The ALJ stated that "the demands of [Plaintiff's] past relevant work" as a corrections officer, "which was generally and actually performed at the medium and heavy exertional levels, exceed the residual functional capacity limiting [Plaintiff] to a reduced range of light exertional work." (*Id.*)

To arrive at its determination of Plaintiff's RFC, the ALJ "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of the applicable regulation. (*Id.* at 21 (citing 20 C.F.R. §§ 404.1529 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).) The ALJ also considered medical opinion evidence and prior administrative medical findings "in accordance with the requirements of 20 C.F.R. 404.1520(c)." (*Id.*)

In considering Plaintiff's symptoms, the ALJ stated that he followed a two-step process. (*Id.* at 22.) First, the ALJ was required to determine whether "there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms." (*Id.*) Second, if there was such an impairment, the ALJ would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit [Plaintiff's] work-related activities." (*Id.*) Applying these standards, the ALJ reviewed the record and found step one satisfied, as Plaintiff's "medically determinable impairments could reasonably be expected to cause the . . . symptoms" that Plaintiff alleged. (*Id.* at 22.) The ALJ then proceeded to the second step and found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects" of Plaintiff's symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 22-23.)

The ALJ then discussed the objective medical evidence the ALJ considered in the RFC assessment. (*Id.* at 23-28.) Subsequently, the ALJ discussed the role that opinion evidence played in his RFC assessment. (*Id.* at 28-35.) The ALJ assessed nearly 20 medical source opinions over eight pages of the decision. (*Id.*)

As relevant here, among the medical source opinions the ALJ considered was an assessment by physical therapists Thomas Xenakis, P.T., D.P.T. and Kevin Dorco, B.S.E. from Kinematic Consultants, Inc. (Kinematic). (*Id.* at 30.) Specifically, the ALJ considered Xenakis' and Dorco's Functional Capacity Evaluation (FCE) of Plaintiff following their independent consultative physical examination on October 29, 2015. (*Id.* at 30 (citing AR 542).) In doing so, the ALJ cited to Exhibit 4F of the Administrative Record, which contained an earlier FCE report dated September 17, 2015 by Kinematic physical therapists Timothy Hatt, M.S.P.T., Monica Lynch, B.S.E., and Dorco. (*Id.* (citing AR 542-73).) As summarized by the ALJ, Xenakis' and Dorco's October 29, 2015 FCE included a conclusion that Plaintiff "is capable of medium exertional work with precautions on left upper extremity activities such as being allowed to change activities during periods of prolonged or repetitive left upper activities greater than 15 minutes (i.e. reaching, lifting, pushing/pulling, and working above shoulder height)." (*Id.* (citing AR 557).)

The ALJ found Xenakis' and Dorco's opinions unpersuasive because they were insufficiently restrictive and unsupported by the underlying physical examination. (*Id.*) Specifically, the ALJ found Xenakis' and Dorco's opinion that Plaintiff is capable of medium exertional work "insufficiently restrictive" because it was inconsistent with their physical examination which showed that Plaintiff had decreased ranges of motion or pain in his lumbar spine, left shoulder, left elbow, bilateral hips, bilateral knees, and left knee, as well as records demonstrating Plaintiff had surgeries for his knee and shoulder. (*Id.*) The ALJ also found the opinion inconsistent with physical examination findings from 2021, which showed Plaintiff had a left limp, difficulty getting on and off the examination table, left shoulder and left knee pain, decreased range of motion in his left shoulder, and decreased range of motion in the lumbar spine. (*Id.*)

As such, the ALJ concluded that Plaintiff has the maximum RFC to perform light work—not medium exertional work with left upper extremity restrictions, as recommended by Xenakis and Dorco. (*Id.* at 21.)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given his age, education, work experience, and RFC results. (*Id.* at 36.) Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "retail marker," "office helper," and "photocopy machine operator." (*Id.* at 36-37.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) As a result, the ALJ concluded that Plaintiff is not disabled for SSD purposes. (*Id.*)

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 n.12 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of

evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

**B. Determining Disability**

To be eligible for SSD due to disability under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C. Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III. DISCUSSION

Plaintiff makes two arguments in support of his appeal. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not evaluate the medical opinion of physical therapist Hatt. (ECF No. 10 at 19-21.) Second, Plaintiff contends that the RFC determination is not supported by substantial evidence because the ALJ did not properly evaluate the entirety of physical therapist Xenakis' opinion. (*Id.* at 21-25.) On review of the ALJ's decision (*see* AR 17-37) and the Administrative Record (*see generally* ECF No. 4), the Court finds good cause to affirm the Commissioner's decision.

"When weighing medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions."

*Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original). Under 20 C.F.R. § 404.1520c(a), for claims filed after March 27, 2017, an ALJ is required to consider medical opinions and determine persuasiveness of the opinions by considering specific factors listed in the regulations. These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). Supportability[4] and consistency[5] are the most important factors. 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ must "explain how [he] considered [these two] factors" but need not "explain how [he] considered" the other factors. *Id.*

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. Rather, it is sufficient for the ALJ to "weave supportability and consistency throughout [his] analysis of which doctors were persuasive." *Id.* And when conducting this analysis, the ALJ is not required to provide a "written analysis about how [he] considered each piece of evidence." *Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (quoting Revisions to Rules

---

4 "Supportability" means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); *see also Zaborowski*, 115 F.4th at 639 (describing the "supportability" factor as an inquiry into "whether medical opinions were [] based on 'objective medical evidence and supporting explanations'").

5 "Consistency" means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); *see also Zaborowski*, 115 F.4th at 639 (describing the "consistency" factor as an inquiry into "whether medical opinions were . . . consistent with other medical opinions in the record").

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017)). Instead, "[t]he new regulations reflect a 'reasonable articulation standard'" in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.* (quoting 82 Fed. Reg. 5844-01, at 5858). At the same time, the Court "need[s] from the ALJ not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." *David T. v. Kijakazi*, Civ. No. 20-9118, 2022 WL 73498, at *2 (D.N.J. Jan. 7, 2022) (quoting *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981)) (alteration in original).

### A. The ALJ's Evaluation of Medical Opinion Evidence by Physical Therapist Hatt

Plaintiff argues that remand is required because the ALJ did not evaluate all medical source statements in the Administrative Record. (ECF No. 10 at 20-21.) Specifically, Plaintiff contends that the ALJ erred when the ALJ did not reference the September 17, 2015 FCE report by Kinematic physical therapists Hatt, Lynch, and Dorco. (*Id.*) The Commissioner argues that the ALJ is not required to explain how each piece of evidence was considered. (ECF No. 14 at 12.) The Commissioner further argues that the ALJ did not ignore physical therapy evidence because the record contains both the assessment from the September 17, 2015 evaluation and the October 29, 2015 evaluation, which are virtually identical, except for two changes. (*Id.* at 10.)

Plaintiff relies on Third Circuit case law for the assertion that the ALJ was required to "give some indication of the evidence which he rejects and the reasons for discounting such evidence." (ECF No. 10 at 19). *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d. Cir. 2000) (citing *Plummer*, 186 F.3d at 429); *see also Cotter*, 642 F.2d at 705. Although an ALJ is required to consider all of the evidence in the Administrative Record and give "some indication of the evidence which was rejected," the Court disagrees with Plaintiff's assertion that the ALJ ignored

physical therapy evidence in its decision. *David T.*, 2022 WL 73498 at *2 (quoting *Cotter*, 642 F.2d at 705-06).

Here, the Administrative Record contains Exhibit 4F, which is comprised of two separate FCE reports by Kinematic physical therapists and which was relied upon by the ALJ in reaching his decision. (AR 542-73.) One is the report from the September 17, 2015 FCE signed by Kinematic physical therapists Hatt, Dorco, and Lynch. (*Id.* at 573.) The other is the report from the October 29, 2015 FCE signed by Kinematic physical therapists Xenakis, Dorco, and Lynch. (*Id.* at 557.) As Defendant points out, there are two changes between the FCE reports. (ECF No. 14 at 10-11.) The first is an acknowledgement in the "Additional Comments" section of the notes of the October 29, 2015 FCE, which states that Plaintiff's "overall strength [has] not changed" since the September 17, 2015 FCE. (AR 557, 573.)

As to the second change, both FCE reports include an opinion that Plaintiff is capable of medium exertional work. (*Id.*) Both reports also recommend that Plaintiff be allowed to change activities at work if Plaintiff uses his upper left extremity for a prolonged or repetitive period of time, such as "reaching, lifting, pushing/pulling, [or] heavy gripping/grasping." (AR 573.) However, the reports differ in their recommendation as to *how often* Plaintiff should be allowed a change in activities. (AR 557, 573.) Specifically, the notes from the September 17, 2015 Kinematic FCE contain a statement that, based on Plaintiff's demonstrated left upper extremity strength, it is recommended that his left upper extremity is allowed a change in activities after a period of greater than ten minutes of prolonged or repetitive left upper extremity activities. (*Id.* at 573.) However, the notes from the October 29, 2015 FCE recommend that Plaintiff be allowed a change in activities after a period of greater than fifteen minutes of prolonged or repetitive left upper extremity activities. (*Id.* at 557.) In other words, Hatt, Dorco, and Lynch recommended in

the September 17, 2015 FCE report that Plaintiff be allowed a change in activities after ten minutes of prolonged or repetitive left upper extremity activities, while Xenakis, Dorco, and Lynch recommended in the October 29, 2015 FCE report that Plaintiff be allowed a change in activities after fifteen minutes of prolonged or repetitive left upper extremity activities. (*Id.* at 557, 573.)

In the ALJ's decision, the ALJ wrote that it considered "the assessments of Thomas Xenakis, P.T., D.P.T., and Kevin Dorco, B.S.E., from Kinematic Consultants, Inc., after [Plaintiff's] independent consultative physical examination in October 2015." (*Id.* at 30 (citing Exhibit 4F).) The ALJ did not explicitly state whether it considered the September 17, 2015 evaluation. (*Id.*) Plaintiff takes issue with what it identifies as the ALJ's lack of consideration of Hatt's September 17, 2015 opinion. (ECF No. 10 at 21.) Plaintiff also argues that "the limitation on using the left upper extremity" contained in the September 17, 2015 FCE, "is more restrictive than the frequent reaching limitation adopted in the RFC," which states that Plaintiff has the RFC to perform light work, but does not contain a limitation on Plaintiff's use of his left upper extremity. (ECF No. 10 at 21; AR 30-31.)

The Court disagrees with Plaintiff's argument that the ALJ was required to distinguish between the portion of the opinion in Exhibit 4F that was signed by Hatt, Dorco, and Lynch and the portion of the opinion in Exhibit 4F that was signed by Xenakis, Dorco, and Lynch. First, Xenakis, Dorco, and Lynch noted that they observed no changes in overall physical strength thereby incorporating the September 17, 2015 evaluation into their October 29, 2015 evaluation. (AR 557, 573.) Second, the September 17, 2015 FCE was not a standalone opinion by Hatt, rather it is an opinion also signed by Dorco and Lynch, the two physical therapists who also provided the October 29, 2015 evaluation. (*Id.* at 573.) As such, the Court disagrees with Plaintiff's identification of the reports as "[p]hysical [t]herapist Hatt's opinion" and "[p]hysical [t]herapist

Xenakis' opinion," when Exhibit 4F to the Administrative Record is more accurately identified as opinions by largely the same providers working under the same organization, Kinematic and is part of an Exhibit the ALJ clearly considered in rendering his opinion. (ECF No. 10; AR 30 (citing AR 542-73).)

Moreover, the Court disagrees with Plaintiff's argument that the recommendation in the September 17, 2015 FCE "is more restrictive" than the RFC adopted by the ALJ. Although the ALJ's RFC does not contain a limitation on Plaintiff's use of his left upper extremity, the ALJ found Plaintiff has the RFC to perform "light work," which is more restrictive than the "medium exertional work" capacity recommended by Kinematic's physical therapists in the September 17, 2015 FCE.

Therefore, because the ALJ's analysis considered all of the medical source statements, as required by the applicable regulations, the ALJ's evaluation of Kinematic's opinion was proper.

**B. The ALJ's Evaluation of Medical Opinion Evidence by Physical Therapist Xenakis**

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly evaluate all the parts of physical therapist Xenakis' opinion. (ECF No. 10 at 21.) Specifically, Plaintiff contends that the ALJ rejected the October 29, 2015 FCE for the "wrong reason" when it concluded that the report was "not restrictive enough" because Plaintiff argues that the recommendation in the October 29, 2015 FCE that Plaintiff be allowed to change activities after fifteen minutes of left upper extremity usage is *more* restrictive than the RFC reached by the ALJ, which does not include a left upper extremity limitation. (ECF No. 10 at 21.) In other words, Plaintiff argues that the RFC adopted by the ALJ is less restrictive than Kinematic's physical therapists' recommendation because the RFC does not contain a left upper extremity limitation.

In support of this argument, Plaintiff contends that the ALJ cannot reject evidence "for the *wrong reason*." (ECF No. 10 at 23 (citing *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022)). However *Mercado v. Kijakazi* also establishes that "it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight." 629 F. Supp. 3d at 281-85 (declining to re-weigh the evidence considered by the ALJ and affirming ALJ's determination).

Here, the ALJ properly weighed the medical opinions and evidence and articulated reasoning as to why it did not rely on the October 29, 2015 FCE in adopting the RFC. In his finding that the October 29, 2015 FCE report was unpersuasive, the ALJ identified deficiencies in the report, specifically, that it was "insufficiently restrictive," "unsupported by the underlying physical examination," and "inconsistent with the consultative physical examination findings from May 2021[.]" (AR 30.) The deficiencies identified by the ALJ are findings that were unchanged between the September 17, 2015 FCE report and the October 29, 2015 FCE report. (AR 542-73.)

Moreover, the RFC adopted by the ALJ is not "less restrictive" than Kinematic's physical therapists' recommendation—it is more restrictive. Indeed, while the physical therapists' October 29, 2015 FCE included the upper left extremity recommendation, they also opined that Plaintiff was capable of "medium category" work. (*Id.* at 557; *id.* at 30 ("[Xenakis and Dorco] opined that [Plaintiff] is capable of medium exertional work with precautions on left upper extremity activities.").) However, the ALJ concluded that Plaintiff was only capable of performing "light exertional work" with postural, manipulative, and environmental limitations. (*Id.* at 30-31.)

The ALJ specifically found Xenakis' and Dorco's opinion that Plaintiff is capable of medium exertional work "insufficiently restrictive" because it was inconsistent with their physical examination which showed that Plaintiff had either decreased ranges of motion or pain in his

lumbar spine, left shoulder, left elbow, bilateral hips, bilateral knees, and left knee. (*Id.*) The ALJ also found the opinion inconsistent with medical records demonstrating Plaintiff had surgeries for his knee and shoulder. (*Id.*) Moreover, the ALJ found the opinion inconsistent with physical examination findings from 2021, which showed Plaintiff had a left limp, difficulty getting on and off the examination table, left shoulder and left knee pain, decreased range of motion in his left shoulder, and decreased range of motion in the lumbar spine. (*Id.*) As a result of these articulated inconsistencies with the Administrative Record, the ALJ thus adopted an RFC of light exertional work with limitations, which is more restrictive than the medium exertional work with limitations recommendation provided by Xenakis and Dorco. (*Id.* at 21.) *See Zaborowski*, 115 F.4th at 639 (finding ALJ was not required to use "the magic words 'support' and 'consistent' and could instead "weave supportability and consistency throughout [his] analysis of which doctors were persuasive."). Indeed, the ALJ spent over half a page explaining the deficiencies in the Kinematic opinions such that the Court can trace the path of the ALJ's reasoning. *See Joseph P.*, 2023 WL 1929945 at *5 (quoting 82 Fed. Reg. 5844-01, at 5858).

Therefore, because the ALJ's analysis complied with the applicable regulations and his conclusions are supported by substantial evidence, the ALJ's evaluation of the October 29, 2015 FCE opinion was proper.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: November 10, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE